UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PATRICIA A. DIAZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:17-cv-314 ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Patricia A. Diaz, on July 24, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Patricia A. Diaz, filed applications for Disability Insurance Benefits and Supplemental Security Income on June 23, 2009, alleging a disability onset date of June 1, 2005. (Tr. 1535). The Disability Determination Bureau denied Diaz's applications initially, upon reconsideration, and in an unfavorable hearing decision dated February 16, 2011. (Tr. 1535). Diaz requested review from the Appeals Council, which was denied on October 17, 2011. (Tr. 1535). On appeal, the United States District Court remanded the Commissioner's final decision for further proceedings on September 30, 2013. (Tr. 822-845).

A second hearing was held, and the Administrative Law Judge (ALJ) again issued an unfavorable decision on February 27, 2015. (Tr. 655-675). Diaz filed a second appeal in the United States District Court that was remanded on a joint motion on January 8, 2016. (Tr. 1706-1707). A third hearing was held before ALJ Romona Scales on February 8, 2017, and the ALJ

again issued an unfavorable decision on April 4, 2017. (Tr. 1536). Diaz appeared and testified at the hearing, as well as Medical Expert (ME) Louis A. Fuchs, M.D., and Vocational Expert (VE) Richard T. Fisher. (Tr. 1536).

Diaz meets the insured status requirements of the Social Security Act through December 31, 2020. (Tr. 1538). On April 4, 2017, the ALJ issued an unfavorable decision and made findings as to each of the steps in the five-step sequential analysis. (Tr. 1535-1551). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Diaz had not engaged in substantial gainful activity since June 1, 2005, the alleged onset date. (Tr. 1538). The ALJ acknowledged that Diaz engaged in work after her alleged onset date, including providing after school child care at her home since 2007. (Tr. 1538). However, the work activity did not rise to substantial gainful activity. (Tr. 1538). Yet, the ALJ noted that Diaz's earnings raised the issue of total disability. (Tr. 1538). The ALJ found that while the earnings did not rise to substantially gainful activity, her work activity had been consistent since the alleged onset date, including her monthly earnings in 2010, 2011, and 2012 coming within $111-$121 of what was indicative of substantial gainful activity per month. (Tr. 1539).

At step two, the ALJ determined that Diaz had the following severe impairments: multi-level degenerative disc disease of the lumbar and cervical spine, mild Sjogren's syndrome, and pelvic floor dysfunction/out dysfunction constipation. (Tr. 1539). The ALJ noted that Diaz had numerous other impairments. (Tr. 1539). However, those impairments did not either meet the durational requirement or were not medically determinable. (Tr. 1539).

The ALJ found that Diaz's hypertension was non-severe because it generally was well controlled with medication and it did not cause more than minimal functional limitations. (Tr.

1539).  Also, Diaz's uterine bleeding was neither severe nor did it meet the durational requirements.  (Tr. 1540).  The ALJ indicated that the record was devoid of evidence that Diaz's right carpal tunnel syndrome caused more than minimal functional limitations.  (Tr. 1540).  Finally, the ALJ found that the record as a whole did not support a finding of fibromyalgia as a medically determinable impairment.  (Tr. 1541).

The ALJ noted that record did not contain treatment by a mental health professional or diagnosis from a mental health professional, participation in therapy, or prescribed medication.  (Tr. 15420.  However, Diaz testified that she experienced depression.  (Tr. 1542).  The ALJ indicated that pursuant to the most recent Order of Remand, the ALJ sent Diaz to a consultative psychological evaluation with Craig A. Nordstrom, Psy.D. on November 8, 2016.  (Tr. 1542).

After the examination, Diaz was prescribed medication for anxiety in January of 2017.  (Tr. 1542).  Diaz indicated that the examination caused an increase in her anxiety because it brought up old memories and feelings.  (Tr. 1542).  The ALJ noted that Diaz had testified that she did not have significant issues with anxiety prior to the examination.  (Tr. 1542).  Specifically, she reported that prior to January of 2017 she had 2-3 panic attacks per month, while after the examination and since starting the medication she experienced 3-4 panic attacks per day.  (Tr. 1542).  The ALJ found that it was notable that Diaz had not sought any treatment for psychological or psychiatric symptoms, which she deemed were severe enough to limit her functioning.  (Tr. 1542).  The ALJ also noted that Diaz had not sought emergency care or treatment.  (Tr. 1542).

The ALJ found that Diaz's medically determinable mental impairments of anxiety, post-traumatic stress disorder, obsessive compulsive disorder, and depression, considered singly and in combination, did not cause more than minimal limitation in her ability to perform basic mental

3

work activities and therefore were not severe. (Tr. 1542). The ALJ considered the paragraph B criteria for mental impairments, which included four areas of mental functioning:

> Understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 1543).

The ALJ determined that Diaz had a mild limitation in understanding, remembering, or applying information. (Tr. 1543). Next, the ALJ found that Diaz had a mild limitation in interacting with others. (Tr. 1543). Dr. Nordstrom opined that Diaz had a mild limitation in the ability to interact appropriately with the public, supervisors, coworkers, and usual work situations and changes in a routine work setting. (Tr. 1543). Also, the ALJ found that Diaz had a mild limitation in concentrating, persisting, or maintaining pace. (Tr. 1543). Dr. Nordstrom noted that Diaz's ability to sustain concentration appeared to be adequate. (Tr. 1543). Finally, the ALJ concluded that Diaz had a mild limitation in adapting or managing herself. (Tr. 1543). The ALJ determined that because Diaz's medically determinable mental impairments caused no more than mild limitations in any of the functional areas, they were non-severe. (Tr. 1543).

At step three, the ALJ concluded that Diaz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 1544). Specifically, the ALJ found that the medical evidence did not meet or medically equal Listings 1.04A and 14.10B. (Tr. 1544).

After consideration of the entire record, the ALJ then assessed Diaz's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for 2 hours of an 8 hour workday and sit for 6 hours of an 8 hour workday. She may need to alternate sitting and standing for up to 10 minutes each hour,

4

> but would remain on task and at the work station when doing so. She is unable to climb ladders, ropes, or scaffolds and can occasionally climb ramp/stairs, balance, stoop, crouch, kneel, and crawl. She is to avoid concentrated exposure to vibration, extreme cold, extreme heat, loud noise, and hazards.

(Tr. 1544). The ALJ explained that in considering Diaz's symptoms she followed a two-step process. (Tr. 1544). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Diaz's pain or other symptoms. (Tr. 1544). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Diaz's functioning. (Tr. 1545). The ALJ determined that Diaz's medically determinable impairments reasonably could have been expected to cause some of the alleged symptoms. (Tr. 1545). However, Diaz's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1545).

Diaz's treating orthopedic surgeon prepared a Medical Assessment of Ability to do Work-Related Activities (Physical) on January 28, 2010. (Tr. 1547). Dr. Kishan Chand indicated that, due to Diaz's history of degenerative disc disease of the lumbosacral spine and chronic low back pain, Diaz retained the capacity to lift less than ten pounds both occasionally and frequently; stand and walk for a total of one hour in an eight hour workday with normal breaks for a half an hour at a time; sit for a total of two hours in an eight hour workday with normal breaks for one hour at a time; never climb, balance, stoop, crouch, and crawl; kneel for less than thirty minutes in an eight hour workday; but never to push and pull more than ten pounds. (Tr. 1547). The ALJ noted that Dr. Chand's opinion was not consistent with the objective clinical findings. (Tr. 1547). The ALJ indicated that the extreme limitations found by

5

Dr. Chand were not supported by his "slight," "mild," and "moderate" clinical findings on examination. (Tr. 1547).

The State agency medical consultants found that Diaz was able to perform work activity at a light exertional level with some postural limitations. (Tr. 1548). However, the ALJ determined that limiting Diaz work activity at a sedentary level was more consistent with the evidence, and their opinions were superseded by later evidence. (Tr. 1548). Dr. Louis Fuchs, M.D., a physician board certified in orthopedic surgery, found that Diaz could lift up to twenty pounds occasionally and up to ten pounds continuously; stand and walk for one hour at a time for two hours of an eight hour workday; sit for one hour at a time for eight hours of a workday; frequently reach overhead, occasionally climb, stoop, kneel, crouch, and crawl; frequently balance; and occasionally work around humidity and wetness, temperature extremes, and vibrations. (Tr. 1548). The ALJ assigned Dr. Fuchs opinion considerable weight, but she found that Diaz's ability to lift and carry was more limited than assessed when considering her impairments in combination. (Tr. 1549).

At step four, the ALJ found that Diaz had no past relevant work. (Tr. 1549). Considering Diaz's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including order clerk, food and beverage (18,000 jobs nationally), microfilm document preparer (66,000 jobs nationally), and stuffer (4,700 jobs nationally). (Tr. 1549-50). The ALJ found that Diaz had not been under a disability, as defined in the Social Security Act, from June 1, 2005 through the date of this decision, April 4, 2017. (Tr. 1550).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the

claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Diaz has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand for additional proceedings. In her appeal, Diaz has argued that the ALJ: (1) failed to include any accommodations for her mild mental limitations in her residual functional capacity; (2) failed to support the residual functional capacity with substantial evidence; and (3)

8

failed to assess the opinions of treating orthopedist Dr. Chand in accordance with 20 CFR § 404.1527.

First, Diaz has argued that the ALJ failed to include any limitations to accommodate her mild mental limitations in the RFC assessment. The ALJ's decision indicated that Diaz's mental impairments of anxiety, post-traumatic stress disorder, obsessive compulsive disorder, and depression, considered singly and in combination, did not cause more than a minimal limitation in her ability to perform basic mental work activities. (Tr. 1542). The ALJ determined that Diaz had mild mental limitations in the four areas of mental functioning, known as paragraph B: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 1543). The ALJ found that because the medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas, they were non-severe. (Tr. 1543). However, although the ALJ found Diaz's mental impairments were not severe, the ALJ found that she had severe impairments of multi-level degenerative disc disease of the lumbar and cervical spine, mild Sjogren's syndrome, and pelvic floor dysfunction/out dysfunction constipation. (Tr. 1539). Thus, the ALJ proceeded through each of the five steps in the sequential analysis.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental

activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).** Thus, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are not considered severe. **20 C.F.R. § 404.1545(a)(2)**; *see also Craft v. Astrue***,** 539 F.3d 668, 676 (7th Cir. 2008).

The court finds that the ALJ erred by failing to incorporate Diaz's mild mental limitations into her RFC analysis at step four. *See Simon-Leveque v. Colvin***,** 2017 WL 168182, at *5-6 (N.D. Ill. Jan. 17, 2017) (collecting cases that remanded the ALJ's decision where the ALJ found mild limitations in activities of daily living, social functioning, or concentration, persistence or pace at step two, but then failed to incorporate these limitations into the RFC analysis at step four); *Dross-Swart v. Astrue***,** 872 F.Supp.2d 780, 795 (N.D. Ind. 2012) (remanding case where the ALJ found mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, but failed to incorporate them into the RFC analysis); *Miller v. Commissioner of Social Security,* 2017 WL 1421271, at *7 (N.D. Ind. 2017) (remanding case where the ALJ failed to explain how his Step 2 discussion of restrictions of daily living, social functioning, and concentration were reflected in the RFC); *McGill v Colvin***,** 2015 WL 224779, at *11 (S.D. Ind. Jan. 13, 2015) ("By neglecting to include any discussion of Plaintiff's mental impairments in the RFC analysis, the ALJ . . . plainly did not provide 'a more detailed' analysis of these impairments than he did at step 2, such that he failed to comply with SSR 96-8p."). The fact that the ALJ discussed Diaz's mental impairments during her earlier step two analysis does not save the ALJ's RFC assessment. The process "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process" is "not an RFC assessment."

SSR 96–8p; *see also* **Paar v. Astrue,** 2012 WL 123596, at *13 (N.D. Ill. Jan.17, 2012) ("[L]imitations determined at Step 2 under the special technique are not a substitute for a RFC finding.").

Thus, "if the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion so that the court can follow the basis of her reasoning." **Muzzarelli v. Astrue**, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing **Haynes v. Barnhart**, 416 F.3d 621, 626 (7th Cir. 2005)). The ALJ cannot ignore entire lines of evidence or cherry-pick the evidence that is favorable to a finding of non-disability. **Golembiewski v. Barnhart**, 322 F.3d 912, 918 (7th Cir. 2003). Rather, the ALJ must weigh all impairments, both severe and non-severe, and consider the effect these ailments have on the claimant's ability to function in their entirety.

Also, previously on the joint motion for remand, the court ordered that the ALJ reevaluate the paragraph B criteria for Diaz's mental impairments and determine whether she had any non-exertional RFC limitations. The ALJ has not done so in the instant matter, and thus violated the law of the case doctrine. The law of the case doctrine dictates that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." **Key v. Sullivan**, 925 F.2d 1056, 1060 (7th Cir. 1991). The Commissioner has not addressed this argument.

The ALJ found at step two that Diaz's mental impairments were not severe, but the ALJ did not later consider the mental impairments when analyzing the RFC. Thus, this is error because the ALJ should have incorporated Diaz's non-severe mental impairments into the RFC analysis. *See* **20 C.F.R. § 404.1545(a)(1)** ("We will assess your residual functional capacity based on *all* the relevant evidence in your case record.") (emphasis added). Because the RFC did

not adequately address Diaz's mental impairments that the ALJ found at step two, remand is appropriate so that the ALJ can address the effects of her mild mental limitations in assessing the RFC.

Next, Diaz has argued that the RFC was not based on substantial evidence. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v.*

*Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ indicated that after consideration of the record, she assessed Diaz's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for 2 hours of an 8 hour workday and sit for 6 hours of an 8 hour workday. She may need to alternate sitting and standing for up to 10 minutes each hour, but would remain on task and at the work station when doing so. She is unable to climb ladders, ropes, or scaffolds and can occasionally climb ramp/stairs, balance, stoop, crouch, kneel, and crawl. She is to avoid concentrated exposure to vibration, extreme cold, extreme heat, loud noise, and hazards.

(Tr. 1544). Diaz has indicated that by contrast Dr. Louis Fuchs, M.D., found that Diaz could lift up to twenty pounds occasionally and up to ten pounds continuously; stand and walk for one hour at a time for two hours of an eight hour workday; sit for one hour at a time for eight hours of an eight hour workday; frequently reach overhead, occasionally climb, stoop, kneel, crouch, and crawl; and frequently balance. (Tr. 1548, 1986-89). The ALJ indicated that she provided a more limited RFC than Dr. Fuchs because Diaz's ability to lift and carry was more limited than assessed when considering her impairments in combination. (Tr. 1549).

The ALJ also assigned little weight to Dr. Chand's opinion that she could lift less than ten pounds occasionally and frequently and sit for no more than two hours out of the workday. (Tr. 553-554). The ALJ noted that Dr. Chand's opinion was inconsistent with the findings of the impartial medical experts', Dr. Hutson and Dr. Fuchs. (Tr. 1548). Also, the ALJ noted that Diaz did not report an exacerbation of symptoms with sitting or an inability to sit for more than two hours in an entire day. (Tr. 1547-1548).

Diaz contends that the ALJ did not explain her findings that she could sit for six hours out of the workday and occasionally lift up to ten pounds. Moreover, Diaz has argued that the ALJ did not explain the basis for including a specific sit/stand option. Diaz has indicated that the ALJ's findings were not based on the opinions of any doctors. However, the RFC determination is reserved to the ALJ as fact-finder for the Commissioner and need not be based on a specific medical opinion, though the ALJ must specify evidence of record that supports the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citation and internal quotation marks omitted).

Diaz testified that she would be in significant pain after sitting for twenty minutes. (Tr. 553, 737). Diaz also had epidural steroid injections and medial branch blocks performed to relieve her lumbar disk disorder with radiculopathy at L4-L5 and cervical radiculopathy throughout 2016. (Tr. 2035, 2042, 2048, 2060, 2417). A cervical spine MRI was performed on September 15, 2016, that showed central disk protrusion with minimal central canal stenosis, mild central stenosis at C5-C6, and central disk protrusion with minimal central canal stenosis at C6-C7. (Tr. 2024-25). Diaz was diagnosed with lumbar facet spondylosis, chronic pain, and lumbar and cervical disk disorders. The above medical evidence was discussed by the ALJ. However, she has not offered any explanation for how she determined that sitting for six hours out of an eight hour workday was an appropriate limitation. Therefore, she has not created a

logical bridge from the evidence to her conclusion to allow the court to trace her path of reasoning by indicating how the evidence supported those limitations.

Next, Diaz has argued that the ALJ did not explain the sit/stand option included in the RFC. The ALJ indicated that Diaz may need to alternate sitting and standing for up to ten minutes each hour but that she would remain on task and at the work station when doing so. The ALJ has not explained what she relied on or how she arrived at the calculation for the sit-stand option in the RFC. *See* **Williams v. Berryhill,** 2017 WL 3130763, at *8 (N.D. Ill. 2017) ("Specifically, there is no narrative discussion of what medical evidence led the ALJ to conclude that a break from sitting would be necessary after 30 minutes (as opposed to earlier or later), or why a 1–2 minute break (rather than a longer one) would be adequate."). The Commissioner has not addressed this argument.

Moreover, Diaz contends that the ALJ erred in failing to consider her off-task time considering that she required frequent time in the bathroom for chronic constipation and severe pelvic floor dysfunction. The ALJ asked the VE, "If the individual were off task for any reason, whether it was restroom breaks, needing to lie down, pain, side effects of medication, what if any impact does that have on the work you've talked about or work in general, if that were 15 percent of the work day?" (Tr. 1612). The VE answered that 15% was within employer tolerances. (Tr. 1612).

The ALJ indicated that Diaz would remain on task when switching from sitting to standing positions at work. Yet, the ALJ asked the VE his opinion concerning off task time, so the ALJ has considered that issue in her decision. Since the ALJ indicated that Diaz would remain on task, it is not clear what evidence necessitated that question to the VE. The ALJ considered the issue of off-task time, but then she failed to provide any analysis of whether, for

15

example, the claimant was limited by any off-task allowances and, if so, for how long. *See*, *e.g.*, ***Washington v. Colvin***, 2013 WL 1903247, at *11 (N.D. Ill. May 7, 2013) (reversing for failure to provide logical bridge as to percentage of time claimant would be off-task); ***Kukec v. Berryhill***, 2017 WL 5191872, at *4 (N.D. Ill. 2017) ("the Court endeavored to follow the ALJ's analysis, but the entire off-task bridge and conclusion have disappeared after the ALJ's hypothetical to the VE."). The Commissioner also has not addressed this argument.

Therefore, without any explanation the court is unable to trace the ALJ's path of reasoning, thus the ALJ has failed to provide a "logical bridge" between the evidence and the RFC conclusion, requiring remand. *See* ***Scott v. Astrue***, 647 F.3d 734, 740 (7th Cir. 2011) (finding no logical bridge where ALJ did not "explain how she reached her conclusions about [claimant]'s physical abilities"); ***Terry v. Astrue***, 580 F.3d 471, 476–77 (7th Cir. 2009) (remanding where ALJ's RFC determination was not supported by substantial evidence).

Finally, Diaz contends that the ALJ did not assess the opinions of treating specialist, Dr. Chand in accordance with 20 C.F.R. § 404.1527. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see* ***Bates v. Colvin***, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must minimally articulate her reasons for crediting or rejecting evidence of disability. ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 Fed. Appx. 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 Fed. Appx. 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment

relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

The ALJ did not assign controlling weight to Dr. Chand. She indicated that the extreme limitations found by Dr. Chand generally were not supported by the physical examination of multiple other physicians who had examined Diaz both before and after he completed the Medical Assessment of Ability to do Work-Related Activities in 2010. (Tr. 1548). The ALJ indicated that she did not assign controlling weight to Dr. Chand's medical source statement because it was not supported by the objective clinical findings contained in the medical evidence and his treatment records. (Tr. 1548). The ALJ noted that Dr. Chand's treatment notes referenced mild tenderness, moderate muscle spasms, and negative straight leg raises, which were inconsistent with his extreme limitations. (Tr. 1547). The ALJ also considered that Diaz had not reported an exacerbation of symptoms with sitting or an inability to sit for more than two hours. (Tr. 1547). Finally, the ALJ determined that Dr. Chand's findings were inconsistent with the findings of Dr. Hutson and Dr. Fuchs. (Tr. 1548).

Diaz contends that the ALJ did not mention her nine year extensive treatment relationship with Dr. Chand and that he was an orthopedic specialist. Also, she has argued the ALJ based her decision to not assign controlling weight to Dr. Chand primarily on examinations from 2010 and 2012, and that the ALJ failed to consider the deterioration in her condition. However, the court may not reweigh the evidence, but determine if the ALJ has supported her decision with substantial evidence and offered "good reasons."

An ALJ must first determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where

18

she applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ uses these factors to determine exactly what weight to assign to the opinion. This process consists of two "separate and distinct steps." ***Williams v. Berryhill***, 2018 WL 264201, at *3 (N.D. Ill. Jan. 2, 2018). The court acknowledges that an ALJ need not explicitly mention every factor, so long as her decision shows that she "was aware of and considered many of the factors." ***Schreiber v. Colvin***, 519 Fed. Appx. 951, 959 (7th Cir. 2013).

The ALJ failed to consider that Dr. Chand had treated Diaz for nine years, the nature and extent of that treatment relationship, and the fact that he was an orthopedic specialist, all factors that weigh heavily in favor of giving his opinion controlling weight. Moreover, the ALJ assigned considerable weight to Dr. Fuchs, the non-examining medical expert who testified at the hearing. Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source, but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty. ***Givens v. Colvin***, 551 Fed. Appx. 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." ***Gudgel v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003).

The ALJ has provided a thorough explanation for her decision, citing inconsistencies in the record and from Dr. Chand's treatment notes, as well as reports from Diaz. Therefore, the court finds that the ALJ met the minimal articulation standard and provided "good reasons" for her decision. However, since this matter is being remanded on a different issue, the ALJ may reconsider the weight assigned to Dr. Chand's opinion. Specifically, the ALJ should consider the factors articulated in 20 C.F.R. § 404.1527.

Diaz contends that the ALJ failed to consider her Sjogren's disease in conjunction with her degenerative disc disease. Dr. Fuchs indicated that he did not opine on Diaz's Sjogren's syndrome. Therefore, she has argued that the ALJ interpreted the evidence relevant to her Sjogren's syndrome and mental impairments herself in determining the RFC. Since the court has remanded this matter on the above issue, the ALJ will have the opportunity to consider all of Diaz's impairments, singly and in combination.

Diaz has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. **Briscoe v. Barnhart**, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 27th day of September, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge